UNITED STATES DISTRICT COURT     **P-SEND**
CENTRAL DISTRICT OF CALIFORNIA   **JS-6**
CIVIL MINUTES - GENERAL

CASE NO: **CV 02-8798-RGK (AJWx)**          **DATE:  May 3, 2004**

TITLE: *THELMA SPIRTOS v. ALLSTATE INSURANCE COMPANY*

PRESENT:   **THE HONORABLE R. GARY KLAUSNER, U.S. DISTRICT JUDGE**

| Sharon L. Williams | Not Reported |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEY FOR PLAINTIFF:               ATTORNEY FOR DEFENDANT:

Not Present                                        Not Present

PROCEEDINGS:    (IN CHAMBERS)    **ORDER RE: (1) DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION**

Presently before this Court is Defendant Allstate's Motion for Summary Judgement, Or In The Alternative, Summary Adjudication ("Motion").  For the reasons discussed below, Defendant's Motion is granted.

I.    **FACTUAL BACKGROUND**

The following facts are undisputed:[1]

---

[1] Plaintiff failed to file a Statement of Genuine Issues of Material Fact.  As such, "the Court . . . assumes that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy . . . ."  Local Rule 56-3.  Accordingly, the Court deems all facts set forth in Allstate's Separate Statement of Uncontroverted Facts as admitted to exist without controversy.  The Court also notes that Plaintiff failed to file an Opposition to Plaintiff's Motion for Summary Judgment.  Although a failure to file an Opposition "may be deemed consent to the granting . . . of the motion[,]" the Court hereby determines Allstate's Motion on its merits.  Local Rule 7-12.

1

Plaintiff Thelma Spirtos ("Plaintiff") filed suit against Defendant Allstate Insurance Co. ("Allstate") for damages arising out of a January 17, 2002 fire at Plaintiff's home located at 16020 Puesta Del Sol, Whittier, California (the "Property"). The Property was covered by a homeowner's insurance policy issued by Allstate to Plaintiff (the "Policy").[2] Plaintiff alleges that Allstate breached the Policy by failing to: (1) clean the Property, (2) make alternative living arrangements for Plaintiff, and (3) pay out all of Plaintiff's Policy benefits. Plaintiff brings suit for the following causes of action:[3]

1)    Violations of the Consumers Legal Remedies Act ("CLRA");
2)    Violation of California Business and Professions Code ("Cal. Bus. & Prof. Code") § 17200 et seq.;
3)    Breach of Contract;
4)    Declaratory Relief;
5)    Breach of Implied Covenant of Good Faith and Fair Dealing; Bad Faith; and
6)    Injunction.

## II.    JUDICIAL STANDARD

### A.    Motion For Summary Judgment

Under the Federal Rules of Civil Procedure, summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Upon such a showing, the Court may grant summary judgment "upon all or any part thereof." Fed. R. Civ. P. 56(a), (b).

To prevail on a summary judgment motion, the moving party must show there are no triable issues of fact as to matters upon which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). On issues where the moving party does not have the burden of proof at trial, the moving party is required only to show that there is an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. at 326.

_____

[2] The Policy is an Allstate Deluxe Plus Homeowner's Policy, bearing Policy No. 027647168 10/15 for the period of October 15, 2001 through October 15, 2002. (The Policy, Policy Declarations, p. 1, attached as Exh. A to the Declaration of Trudy Eichen ("Eichen Decl."), ¶ 3).

[3] On January 10, 2003, the Court dismissed the following causes of actions in the Complaint: (1) Breach of Fiduciary Duty; (2) Constructive Fraud; (3) Intentional Infliction of Emotional Distress; and (4) Intentional Interference with Prospective Economic Advantage.

To defeat a summary judgment, the non-moving party may not merely rely on its pleadings or on conclusory statements. Fed. R. Civ. P. 56(e). Nor may the non-moving party merely attack or discredit the moving party's evidence. Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983). The non-moving party must affirmatively present specific admissible evidence sufficient to create a genuine issue of material fact for trial. See Celotex Corp v. Catrett, 477 U.S. at 324.

## III.   DISCUSSION

### A.   Allstate Is Entitled To Summary Judgment

Defendant Allstate argues that it is entitled to summary judgment with respect to Plaintiff's remaining claims for (1) Breach of Contract, (2) Declaratory Relief, (3) Bad Faith, (4) Violations of the CLRA, (5) Violations of Cal. B&P Code § 17200, and (6) Injunctive Relief.

#### 1.   *Allstate Is Entitled To Summary Judgment As To Plaintiff's Breach of Contract Claim*

The essential elements for proving a breach of contract are: (1) the existence of a contract, (2) the plaintiff's performance or excuse for nonperformance of the contract, (3) the defendant's breach, and (4) damage to the plaintiff as a result of the defendant's breach. Careau & Co. V. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1388 (1990; Reichert v. General Insurance Company of America, 68 Cal.2d 822, 830 (1968). If the plaintiff incurs no damages as a direct result of defendant's alleged breach, then a breach of contract claim fails as a matter of law. Golden Eagle Refinery Co. v. Associated Int'l Ins. Co., 85 Cal. App. 4th 1300, 1316 (2001). Where the plaintiff claims breach of an insurance contract, the plaintiff must demonstrate that the insurer denied benefits due under the insurance policy. Maxwell v. Fire Ins. Exch., 60 Cal. App. 4th 1446, 1449 (1998).

In the present matter, the Policy specifically proves that Allstate is not obligated to pay benefits until the amount of the loss is determined. Specifically, the Policy states, in relevant part, that:

> In the event of a loss to any property that may be covered by this policy, you must:
>
> . . .
>
> g)   within 60 days after the loss, give us a **signed sworn proof of the loss**. This statement must include the following information:
>
>    1)   the date, time, location and cause of the loss;
>    2)   the interest insured persons and others have in the property including any encumbrances;

3)    the actual cash value and amount of loss for each item damaged, destroyed or stolen;

4)    Any other insurance that may cover the loss;

. . .

We will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between you and us, an appraisal award, or a court judgment.

(The Policy, pg. 15, Section I Conditions, attached as Exh. A to the Eichen Decl. (emphasis added)). California Courts have consistently enforced this provision, holding that an insurer is not liable for a loss until 60 days after the value of the loss is determined by agreement of the parties or some other stated method, such as an appraisal. See, e.g., Hughes v. Potomac Ins. Co., 1999 Cal. App. 2d 239, 254 (1962) (an insurer "is entitled to rely on the clause of its policy stating that liability should not commence until 60 days after the filing . . . of the appraisers' award"); Gillis v. Sun Ins. Office, Ltd., 238 Cal. App. 2d 408, 425 (1965) ("the policy terms as to time of payment will govern"); Kahn v. Allemannia Fire Ins. Co., 16 Cal. App. 2d 39, 41 (1936).

Allstate maintains that the three types of coverages under the policy – Structure, Contents, and Additional Living Expense ("ALE") – have been fulfilled by Allstate as a matter of law. This Court agrees.

### a.    *Structure Coverage*

Under the Structure Coverage, Allstate is required to pay the actual cash value of the cost to repair the fire damage to the Property, less depreciation as provided by the Policy. Allstate obtained an estimate of $171,000.00 to repair the fire damage. Plaintiff's contractor, Robert Sherwood ("Sherwood") of Corner Stone Creations, submitted a competing estimate for $300,000.00. Allstate rejected Sherwood's estimate as excessive.

As for Sherwood's estimation of damages, Sherwood stated that he originally estimated the fire damage to be close to $170,000.00, which he testified was a reasonable estimate of the damage to Plaintiff's property, (Sherwood Depo. 19:9-10; 41:5-18; 45:17-46:1, attached to Exh. A to the Winthrop Decl., ¶ 2). Plaintiff never disclosed Sherwood's First Estimate To Allstate. (Declaration of Tod Rasmussen ("Rasmussen Decl."), ¶ 6). Sherwood admitted during his deposition that his $300,000.00 estimate included Plaintiff's demand for additional "high-dollar" repairs, which was excessive. (Rasmussen Decl., ¶ 7). Sherwood inflated the $170,000.00 original estimate with more "high-dollar" items at Plaintiff's request. (Sherwood Depo, 28:9-29:17, attached as Exh. A to the Winthrop Decl., ¶ 2).

Based upon the record, this Court finds that Allstate's payment of the $171,000.00 estimate less depreciation was consistent with the value of the fire damage to the property. Plaintiff has not offered any evidence that Plaintiff is entitled to any additional recovery under the

4

Structure Coverage. Because Allstate paid the benefits due, there can be no finding that Allstate breached the Policy's Structure Coverage.

### b.    *Contents Coverage*

With respect to the Contents Coverage, the Policy specifically states that Plaintiff shall provide Allstate with a list of personal property damaged by the fire and to indicate the cost to repair each item, or to replace it if it cannot be repaired, and all documents to support that claim. (The Policy, p. 15, Section I Conditions, attached as Exh. A to the Eichen Decl.). Plaintiff refused to comply with this requirement. Plaintiff also refused to participate in an examination under oath, which was also required under the Policy.[4]  Instead, Plaintiff demanded that Allstate pay the full Contents Coverage value of $560,000.00. Plaintiff provides no explanation or support for her demand for the Contents Coverage limit.

Under these facts, there is no showing that Allstate breached the Policy with respect to the Contents Coverage. Plaintiff provides no evidence to the contrary.

### c.    *ALE Coverage*

Similarly, with respect to the ALE Coverage, there is no breach of contract. The Policy's ALE Coverage provides that an insured may be reimbursed for expenditures when forced to relocate to an alternative residence because the insured's home is uninhabitable due to a covered loss. (The Policy, p. 12, Additional Protection, attached as Exh. A to the Eichen Decl., ¶ 3). Plaintiff, as the only named "insured," is the only person entitled to additional living expenses under the Policy. As such, Allstate is required to reimburse Plaintiff for expenses incurred while she was residing in an alternative residence, including the rental of that residence. Allstate paid Plaintiff for such expenses. It is undisputed that Plaintiff lived in a rental home between January and May 2002, paid for by Allstate. In May 2002, Plaintiff moved back to the Property and has continually lived there in the guest house.

After the fire, Plaintiff located a rental property (the "Lindante Property"). As an accommodation to Plaintiff, Allstate advanced to Plaintiff the security deposit and approximately $5,000.00 for the monthly rent. Allstate paid $21,555.00 for Plaintiff to live at the Lindante Property from late January through mid-May 2002. In April 2002, Plaintiff terminated her lease on the Lindante Property due to alleged security problems and moved out in May 2002.

In May 2002, Eardley requested that Allstate approve a 1-year lease for a home in Malibu at a rent of $25,000.00 per month. Eardley also requested a lease for a home in Hollywood for $12,000.00 per month.

---

[4] The Policy requires the insured to submit to examinations under oath at Allstate's request "as often as [Allstate] reasonably require[s]." (The Policy, p. 15, Section I Conditions, attached as Exh. A to the Eichen Decl., ¶ 3).

Allstate retained two companies to do independent estimates of the fair market value of the Property. One company estimated the fair market value as $11,000.00 to $12,000.00, and the other company appraised the value at $5,000.00. Allstate forwarded the rental value estimates to Eardley and advised him that it would approve a lease in an amount comparable to the fair market value of Plaintiff's home. Because of the wide discrepancy in fair market values, Allstate advised Eardley that the fair market value would be submitted to appraisal pursuant to the Policy. Plaintiff submitted the ALE issue to appraisal to obtain a determination of the fair rental value of the property.[5]

On May 21, 2002, Eardley requested approval of a $12,000.00 per month lease on a home in Hollywood (the "Hollywood Property"). On June 11, 2002, Allstate told Eardley that it would pay for the rental of the Hollywood Property for three months at $12,000.00 per month while the ALE issue was being determined by the appraisal process. Allstae paid $36,000.00 to secure the lease on the Hollyridge Property, and another $12,000.00 in rent ($48,000.00 total). In July 2002, Eardley advised Allstate that the Hollywood Property lease was terminated due to alleged security risks.

Allstate paid a total of $81,142.00 under the ALE Coverage from January 2002 to January 2003. To date, Allstate has not been presented with any outstanding bills for ALE reimbursement.

The above undisputed facts do not demonstrate that Allstate breached the ALE Coverage and, as such, Plaintiff fails to met her burden of showing that a triable issue of material fact exists. Plaintiff provides no evidence that Allstate breached the Policy's Structure Coverage, Contents Coverage or ALE Coverage. As such, summary judgment is warranted with respect to Plaintiff's Breach of Contract Claim.

---

[5] Under the Policy's ALE Coverage, if Allstate and the insured fail to agree on the amount of loss, either Allstate or the insured is entitled to make a written demand for an appraisal. (The Policy, p. 17, Section I Conditions, attached as Exh. A to the Eichen Decl., ¶ 3). As stated above, Allstate informed Plaintiff that the value of Plaintiff's loss would be determined under this appraisal provision. Although Plaintiff initially adhered to the appraisal process, Plaintiff later refused to comply. The following facts are relevant to Plaintiff's refusal to comply: After Allstate invoked the Appraisal Provision, Allstate and Plaintiff each selected an appraiser, who in turn, selected Judge Richard Harris (Ret.) to act as Umpire at the appraisal hearing. On December 26, 2002, Eardley informed Judge Harris that the scheduled hearing date would have to be continued to March 2003. Judge Harris rescheduled the appraisal hearing for May 19-20, 2003. Then, on May 15, 2003, Eardley notified Judge Harris that the appraisal hearing would have to be continued again. Before an appraisal hearing could occur, Eardley notified Judge Harris, nearly eight months after Judge Harris was selected as Umpire, that Eardley was disqualifying him from acting as Umpire. On August 4, 2004, Gary Halpin was selected as the new Umpire. On August 14, 2003, Eardley notified Allstate that Plaintiff would not go forward with the appraisal process.

6

**B.      Allstate Is Entitled To Summary Judgment With Respect To Plaintiff's**
**         Declaratory Relief Claim**

Under the Declaratory Judgment Act, federal courts are conferred with "unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). Specifically, the United States Supreme Court has stated that:

> By the Declaratory Judgment Act, Congress sought to place a
> remedial arrow in the district court's quiver; it created an
> opportunity, rather than a duty, to grant a new form of relief to
> qualifying litigants . . . . In the declaratory judgment context, the
> normal principle that federal courts should adjudicate claims
> within their jurisdiction yields to considerations of practicality and
> wise judicial administration.

Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995).

Plaintiff's claim for declaratory relief requests relief identical to that stated in Plaintiff's breach of contract claim. Specifically, Plaintiff seeks a declaration that Plaintiff has not received all Policy benefits currently due and owing. However, the Court cannot grant the requested relief where, as here, Plaintiff fails to demonstrate that any benefits are actually due. The record indicates that Allstate has complied with its obligations under the Policy. As such, Allstate is entitled to summary judgment with respect to Plaintiff's Declaratory Relief claim.

**C.      Allstate Is Entitled To Summary Judgment With Respect To Plaintiff's Bad**
**         Faith Claim**

Under California law, a breach of implied covenant of good faith and fair dealing has two elements: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." Love v. Fire Ins. Exch., 221 Cal. App. 3d 1136, 1151 (1990); Waller v. Truck Ins. Exch, Inc., 11 Cal. 4th 1, 25 (1995). "Where benefits are withheld with proper cause, there is no breach of the implied covenant." Id.

Here, Allstate paid Plaintiff $171,894.00 based on an estimate to repair the fire by Pyrotech Restoration ("Pyrotech").[6] Plaintiff fails to establish that a triable issue remains as to whether the Property was damaged for more than that amount. Plaintiff's own contractor stated that Pyrotech's repair estimate was reasonable, and admitted that he inflated his $300,000.00

---

[6] On May 8, 2002, Allstate's adjuster Tod Rasmussen ("Rasmussen") sent Plaintiff a letter and a check for $154,244.00 and advised Plaintiff that the check represented the full cost to repair the fire damage to the Property as set forth in Pyrotech's estimate ($171,894.00), less depreciation ($17,649). (Correspondence from Rasmussen to Eardley, dated May 8, 2002, attached as Exh. C to the Rasmussen Decl., ¶ 11).

estimate at Plaintiff's insistence.  Based on the record before the Court, there is no indication that Allstate's denial to pay the $300,000.00 was "unreasonable and without proper cause."  <u>Love v. Fire Ins. Exch.</u>, 221 Cal. App. 3d 1136, 1151 (1990)

Moreover, it is undisputed that Allstate has repeatedly requested that Plaintiff provide a list of damaged goods with documentation as to whether such goods are salvageable or must be replaced and at what cost.  Although required under the Policy, Plaintiff never presented Allstate with the requested information, and refused to take an examination under oath so that Allstate could evaluate and investigate Plaintiff's claims.  The record indicates that Plaintiff has not submitted a repair cost for the fire damage to the structure of the Property, its contents, or provided a competing estimate of the rental value of the Property.  Nevertheless, Allstate advanced Plaintiff $2,000.00 to cover immediate Contents expenses, and $21,240.00 towards the repair of damage to her personal property caused by the fire.  In response, Plaintiff, without supporting documents, claimed $560,000.00 in Contents damage.

Under the facts of this case, the Court concludes that no reasonable jury could find Allstate liable for bad faith.  Indeed, there is no evidence of bad faith.  Because Plaintiff fails to show that a genuine issue of material fact exists, Allstate is entitled to summary judgment with respect to Plaintiff's Bad Faith Claim.

**D.    <u>Allstate Is Entitled To Summary Judgment With Respect To Plaintiff's CLRA Claim</u>**

The CLRA applies to the sale of "goods" and "services" in California.  Cal. Civ. Code § 1770(a).  Specifically, the CLRA § 1770(a) prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or what results in the sale or lease of goods or services to any consumer . . . ."[7]  Cal. Civ. Code § 1770(a).

In the present matter, Plaintiff offers no proof of a viable CLRA claim.  Plaintiff cannot simply rely on the allegations in her Complaint to survive summary judgment.  As such, Allstate is entitled to summary judgment with respect to Plaintiff's CLRA Claim.

**E.    <u>Allstate is Entitled To Summary Judgment With Respect To Plaintiff's Cal. Bus. & Prof. Code § 17200 Claim</u>**

---

[7] The CLRA defines "goods" as "tangible chattels," Cal. Civ. Code § 1761(a), and "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods."  Cal. Civ. Code § 1761(b).  Although Allstate argues that an insurance contract cannot be, by definition, either a "tangible chattel" or a "work, labor, or service" under the CLRA, the Court need not address this issue in deciding whether summary judgment is appropriate.  Indeed, Plaintiff has not offered any evidence to support her CLRA claim.

California Business and Professions Code § 17200 prohibits unfair competition, including any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To determine whether a particular business practice is unfair, a court should balance the practice's impact on its alleged victim with the reasons, justifications, and motives of the alleged wrongdoer. See Podolsky v. First Healthcare Corp., 50 Cal. App. 4th 632, 647 (1996) (quoting State Farm Fire & Casualty Co. v. Superior Court, 45 Cal. App. 4th 1093, 1102 (1996)). "An unfair practice occurs when the practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Id.

Plaintiff has not raised a triable issue of material fact that Allstate engaged in "unfair" conduct. Although Plaintiff alleges that Allstate's conduct is unfair, Plaintiff fails to support her contentions with evidence. Plaintiff's cannot survive summary judgment with conclusory statements of unlawful treatment. As such, Allstate is entitled to summary judgment with respect to Plaintiff's Bus. & Prof. Code § 17200 Claim.

F.    **Allstate Is Entitled To Summary Judgment With Respect To Plaintiff's Claim For Injunctive Relief**

Under California law, "[a]n injunction properly issues only where the right to be protected is clear and injury is impending and so immediately likely as only to be avoided by issuance of the injunction." East Bay Mun Utility Dist. V. Dept. of Forestry & Fire Protection, 43 Cal.App. 4th 1113, 1126 (1996). Here, Plaintiff alleges that she is exposed to various toxins and other contaminants such as asbestos, which are causing Plaintiff continual injury. The request for additional money is presumably to recover for the treatment or removal of toxins. However, because Plaintiff has not proven that her injuries exist, and that those injuries result from Allstate's alleged refusal to provide coverage as provided under the Policy, issuing an injunction to compel Allstate to provide Plaintiff with additional money is not warranted. As such, summary judgment with respect to Plaintiff's claim for injunctive relief is appropriate.

IV.    **CONCLUSION**

Accordingly, Allstate's Motion for Summary Judgment, or in the Alternative Summary Adjudication is **GRANTED** in its entirety. The action is dismissed on the merits and Allstate is to recover its costs.

**IT IS SO ORDERED.**

MINUTES
CIVIL - GEN

Initials of Deputy Clerk: stw

9